By the Court.—Freedman, J.
In respect to the removal of incumbents, holding office or place under the municipal government of the City of New York, a wide distinction was always observed between certain classes, and especially between heads of departments and subordinates within the departments.
Under the charter of 1857, the heads of the finance department and of the law department could be removed by the governor for cause, in like manner as sheriffs may be removed. Other heads of departments could be removed by the mayor, by and with the consent of the board of aldermen (Laws 1857, ch. 446, §§ 20-21).
Under the charter of 1870 heads of departments were removable only after impeachment by the mayor, and trial of charges by the full court of common pleas (Laws 1870, ch. 137, § 29).
*87 Under the charter still in force, heads of departments may be removed by the mayor for cause, and after opportunity to be heard, subject, however, before the removal can take effect, to the approval of the governor, expressed in writing; and to that end the mayor is required, in all cases, to communicate to the governor, in writing, his reasons for the removal (Laws 1873, ch. 335, § 25). This section was construed by the court of appeals in People ex rel. Mayor v. Nichols (79 N. Y. 582). In delivering the unanimous opinion of the court on that occasion, Danforth, J., says: “The power is not an arbitrary one, to be exercised at pleasure, but only upon just and reasonable grounds, and then not until after notice to the person charged, lor in no other way could he have an opportunity to be heard. The proceeding, therefore, must be instituted upon specific charges, sufficient in their nature to warrant the removal, and then, unless admitted, be proven to be true. Defendant might also cross-examine the witnesses produced to support the charges, call others in his defense, and in these and other steps in the proceeding be represented by counsel. In no other way could the person sought to be removed have a due hearing or an opportunity to be heard, and this condition must be complied with before the power of removal is exercised (citing authorities). It follows, therefore, that the proceeding is judicial in its character, and, as a necessary consequence, is subject to review by a writ of certiorari, &c., &c.”
But the subordinates within the departments, including heads of bureaus and clerks, were, with a few exceptions, perhaps, removable at the pleasure of the heads of the departments until the charter of 1873 (Laws 1857, ch. 446, § 21 ; Laws 1870, ch. 137, § 32).
By § 28 of the charter of 1873, re-enacted as § 48 of ch. 410 of the Laws of 1882, commonly spoken of as the consolidation act, under which the present controversy arises, it was provided as follows :
*88 “The heads of all departments (except as otherwise herein specifically provided), shall have power to appoint and remove all chiefs of burean (except the chamberlain), as also all clerks, officers, employees and subordinates in their respective departments, except as herein otherwise specifically provided, without reference to the tenure of office of any existing appointee. But no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation, and in every case of a removal, the true grounds thereof shall be forthwith entered upon the records of the department or board. In case of removal, a statement, showing the reason therefor, shall be filed in the department,” &c., &c.
By the charter of 1873 and the consolidation act, therefore, the general power which had always been vested in the heads of the departments to remove their subordinates, was continued, subject to a limitation in respect of two classes of subordinates, viz: regular clerks and heads of bureaus.
It is conceded in the case at bar that the question as to what were the respective rights and duties of the relator and of the respondent upon the facts disclosed by the record, depends upon the construction to be given to section 28 of the charter of 1873, continued by section 48 of the act of 1882. It is also conceded that the rélator was a regular clerk within the meaning of that section.
In allowing the writ of certiorari the learned judge at special term had before him only the petition in which the relator claimed that he had been illegally removed from office because no opportunity had been given to him to make an explanation as required by law. But the case is now to be disposed of on the return to the writ. If the return is false in fact or insufficient in form, the remedy is, in the former case, by action for false return, and in the latter by compelling a further or more specific return.
The allegations of the return that the relator was informed that it was proposed to remove him on account of his neglect to cancel coupons which he had paid and which *89 it was Ms duty to cancel, and that, he was then required to make an explanation in respect thereto, and that he did make to the comptroller a denial of the facts which were alleged to constitute the neglect of duty urged against him, cannot therefore be controverted and they must be taken as true. They clearly establish the existence of sufficient cause for removal, and consequently the only questions presented by the record are, whether the relator was sufficiently informed of the cause of his proposed removal, and whether he was allowed a sufficient opportunity of making an explanation.
Upon these questions the decision of the court of appeals in People ex rel. Thomas Keeth v. Hubert O. Thompson, Commissioner of Public Works, controls, which had not been made when the writ was allowed. Whatever doubts may have existed under earlier decisions, and especially under the broad language of the case of People ex rel. Munday v. Board of Fire Commissioners (72 N. Y. 445), have now been cleared up. In the case of Thomas Keeth (not yet reported) it was expressly held that no trial, not even a summary one, was contemplated by section 28. The unanimous opinion of the court is: “ . . . .It seems to have been intended that the commissioner should exercise this power upon facts within his own knowledge or based upon information received by him, after communicating to the relator his purpose of removing Mm with notice of the reason why he proposed to take such action, and after allowing an opportunity to make explanation as to the facts assigned as grounds for the removal. Ho testimony is required to be taken as to the basis of the commissioner’s action; it is enough that he assigns , a sufficient cause for the removal and furnishes an opportunity to the relator for explanation of the same. This tends to prevent removals without any cause whatever, or upon personal or political grounds. It would be unnecessary to take proof of neglect or omission of duty within the knowledge of the chief of the department, and the statute does not require any such formality.....If the commissioner was to be *90 constituted a court for the purpose of trying every charge which might properly be preferred for violation of duty, it would tend very much to embarrass the action of that officer an(l also interfere with the interest of the public. If a trial was to be had, the law no doubt would have so provided,'and not for an explanation merely. In cases where the legislature intended that the removal should not be made without cause proven, provision is made for the preferring of charges and an examination of the same. This rule prevails as to members of the police force (§ 41, ch. 335, Laws of 1873), and also as- to firemen (§ 77, Ibid.). . . . . In section 25 the removal is only to be had ‘ for cause after an opportunity to be heard,’ which implies that a hearing must be had, which is equivalent to a trial, as the case last cited holds (referring to People ex rel. Nichols v. Mayor, &c., 79 N. Y. 582). The language of this section is direct and peremptory. Under section 28 the officer is to be informed of the cause of removal, and permitted not to have a hearing or trial, but only an opportunity to make an explanation in reference to the charges preferred. There is a difference between a hearing and an explanation. The former may well import, as has been held, a formal trial, while the latter involves merely an oral or written statement as to the charge made without that precision andformality which is required upon a hearing or trial.
Under this authoritative exposition of the law governing the case at bar ; and there being no requirement that the information concerning the cause of the proposed removal must be given in writing, it must be held that the conversation shown by the return to have preceded the service of the formal notice on May 15, 1883, conveyed sufficient information to the relator of the cause of his proposed removal and constituted a sufficient opportunity to him to make his explanation ; that, as no question was then and there raised in respect to the right to be represented by counsel, such right, if it existed at all, was waived ; that all the steps required by the statute to perfect the right of the comptroller to make the removal were then and there *91 completed ; that thereafter it only remained for the, comptroller to make the order of removal and to enter and file the true grounds for the removal; and that consequently the issue and service of the notice subsequent to the said conversation were superfluous and unnecessary to a valid exercise of the power of removal. The relator had no absolute right to an adjournment or to any further notice, especially as in his petition he concedes that prior to May 15 he had had many interviews with the comptroller, in each of which he had protested against the charge made against him. It is evident, therefore, that the relator was well aware of the full extent of the charge made against him, and that all he.could do was to deny the charge. But the comptroller possessed the power to determine the weight to be given to every such denial upon facts within his own knowledge or upon information satisfactory to himself which he was not bound to disclose. Under these circumstances the conclusion is inevitable that when on May 16, the relator refused to say anything further except through counsel and the comptroller refused to hear counsel, such refusal on the part of the comptroller was not an abuse of his discretionary powers and consequently does not constitute a sufficient ground for reversing the removal thereafter made. In the case of.Thomas Keeth above referred to is was distinctly held that the question as to the reasonableness of the time allowed for making an explanation rests to a great extent in the discretion of the officer clothed with the power of removal, and that, unless such discretion is abused, the courts will not interfere.
A final order should be entered, as provided by section 2141 of the Code of Civ. Pro., confirming the determination reviewed, with costs to the respondent fixed at the sum of $25 and disbursements.
Sedgwick, Ch. J., concurred.